UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARY WATTS, | ) | Case No. CV 09-2335-JEM |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | AFFIRMING DECISION OF THE |
| v. | ) | COMMISSIONER OF SOCIAL SECURITY |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |

**PROCEEDINGS**

On April 9, 2009, Mary Watts ("Plaintiff" or "Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Disability Insurance benefits and Supplemental Security Income ("SSI") benefits.  The Commissioner filed an Answer on July 20, 2009.  On October 15, 2009, the parties filed a Joint Stipulation ("JS").  The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge.  After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be affirmed.

**BACKGROUND**

On July 19, 2005, Plaintiff Mary Watts filed an application for Disability Insurance and/or SSI benefits.  (AR 19.)  She is a 54 year old woman who has the medically determinable impairments of degenerative disc disease of the lumbosacral spine, degenerative joint disease of the knees, obesity, hypertension, and asthma.  (AR 22, 106.) She has not engaged in substantial gainful activity since December 31, 2004, the alleged onset date.  (AR 22.)

Plaintiff's claims were denied initially on August 26, 2005, and subsequently on August 20, 2007, by Administrative Law Judge ("ALJ") London R. Steverson.  (AR 19.)  The ALJ ruled that the Claimant was not disabled because she had the residual functional capacity ("RFC")[1] to perform a wide range of light work.  (AR 39.)

ALJ Steverson accepted the RFC assessment of the consultative orthopedist, Dr. Herbert Johnson.  (AR 19.)  The ALJ, however, did not accept Dr. Johnson's opinion that Claimant required a "sit/stand" option.  (AR 19.)  Without consulting a vocational expert, the ALJ found that the nonexertional limitations that were established had little or no effect on the light, unskilled job base.  (AR 19.)

On December 18, 2007, the Appeals Council remanded the case.  (AR 19.)  In its Order, the Appeals Council held that there was no convincing evidence to support the acceptance of the RFC of Dr. Johnson but not his "sit/stand option."  (AR 39.)  The Appeals Council directed the ALJ on remand to obtain evidence from a vocational expert to "clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14)."  (AR 40.)

On remand, a hearing was held on June 3, 2008, in Pasadena, California before ALJ Richard A. Urbin.  (AR 20.)  Vocational expert Jane Haile testified at the hearing.  (AR 20.) Claimant was represented by counsel.  (AR 20.)

_____

[1]   Residual functional capacity is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The ALJ issued an unfavorable decision on June 25, 2008.  (AR 19-29.)  The ALJ

accepted Dr. Johnson's sit/stand option.  (AR 26.)  Based on the testimony of the vocational

expert, the ALJ concluded that, even after considering the extent to which the sit/stand

limitation eroded the unskilled light occupational base, there were still significant numbers of

available jobs in the national economy for someone with Claimant's individual

characteristics.  (AR 28.)  Therefore, the ALJ made a finding of "not disabled" and

concluded that Claimant has not been under a disability as defined in the Social Security Act

since December 31, 2004.  (AR 28.)

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the only disputed issue that Plaintiff is raising as

grounds for reversal and remand is as follows:

1.  Whether the ALJ properly utilized the Social Security Administration's Medical

Vocational Guidelines ("Guidelines" or "grids") as a framework for decisionmaking pursuant

to 20 CFR § 416.969a(d) and Social Security Ruling 83-14?

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine

whether the ALJ's findings are supported by substantial evidence and whether the proper

legal standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).

Substantial evidence means "'more than a mere scintilla' but less than a preponderance."

Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402

U.S. 389, 401 (1971)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion."  Richardson, 402 U.S. at 401 (internal quotations and

citations omitted).  This Court must review the record as a whole and consider adverse as

well as supporting evidence.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.

2006).  Where evidence is susceptible to more than one rational interpretation, the ALJ's

decision must be upheld.  Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999).  "However,

a reviewing court must consider the entire record as a whole and may not affirm simply by

1  isolating a 'specific quantum of supporting evidence.'"  Robbins, 466 F.3d at 882 (quoting

2  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d

3  625, 630 (9th Cir. 2007).

4  **DISCUSSION**

5       The Court concludes that the ALJ's determination that Plaintiff is not disabled is

6  supported by substantial evidence and free of legal error.

7       **A.**    **The Sequential Evaluation**

8       The Social Security Act defines disability as the "inability to engage in any substantial

9  gainful activity by reason of any medically determinable physical or mental impairment

10  which can be expected to result in death or . . . can be expected to last for a continuous

11  period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The

12  Commissioner has established a five-step sequential process to determine whether a

13  claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

14       The first step is to determine whether the claimant is presently engaging in

15  substantially gainful activity.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the

16  claimant is engaging in substantially gainful activity, disability benefits will be denied.

17  Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  Second, the ALJ must determine whether the

18  claimant has a severe impairment or combination of impairments.  Parra, 481 F.3d at 746.

19  Third, the ALJ must determine whether the impairment is listed, or equivalent to an

20  impairment listed, in Appendix I of the regulations.  Id.  If the impediment meets or equals

21  one of the listed impairments, the claimant is presumptively disabled.  Bowen, 482 U.S. at

22  141.  Fourth, the ALJ must determine whether the impairment prevents the claimant from

23  doing past relevant work.  Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).  If the

24  claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and

25  must determine whether the impairment prevents the claimant from performing any other

26  substantial gainful activity.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

27

28

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity, age, education, and work experience. Tackett v. Apfel, 180 F.3d 1094, 1099-1100 (9th Cir. 1999). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines commonly known as the "grids." 20 C.F.R. Part 404, Subpart P, App. 2. When a claimant has both exertional (strength) and nonexertional limitations, the grids do not direct a decision of disabled or not disabled, and the ALJ must take the testimony of a vocational expert. Moore, 216 F.3d at 869.

In this case, the ALJ determined at Step 4 that Plaintiff's severe impairments prevented her from performing her past relevant medium and semi-skilled work as a Child Monitor and Hospital Cleaner. (AR 27.) These jobs exceed Plaintiff's ability to carry and lift. (AR 27.)

Thus, the Commissioner had the burden at Step 5 to demonstrate that Plaintiff can perform other gainful activity. Based on the testimony of the vocational expert, the Commissioner determined that there are jobs in significant numbers that exist in the national economy that the Claimant can perform (AR 27) and that Plaintiff is not disabled within the meaning of the Social Security Act. (AR 28.)

**B.    Relevant Evidence**

Neither party disputes the findings of fact of the ALJ. Both parties accept the RFC assessment of consulting orthopedist Dr. Herbert Johnson. The ALJ interpreted Dr. Johnson's opinion as follows:

The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for six out of eight hours, and sit for

six hours in an eight-hour workday.  She does not require an assistive
device.  <u>She must periodically alternate sitting and standing.</u>  She can
occasionally climb, bend/stoop, crouch and crawl.  She can tolerate
occasional exposure to marked changes in temperature and humidity.
She has no limitations with driving automotive equipment or exposure to
dust fumes, and gases.

(AR 26, 282 (emphasis added).)

The ALJ also found that Plaintiff is an individual "closely approaching advanced age"
beginning November 11, 2005, has a limited education (11th grade), and is able to
communicate in English.  Based on these characteristics and on Dr. Johnson's RFC
assessment with a sit/stand limitation, vocational expert Janet Haile testified that Plaintiff
could not return to her prior work.  (AR 314.)  Claimant would be limited to light "bench"
work with stools that allow her to sit or stand.  (AR 314.)  An example of these jobs would be
a floor worker which is light unskilled work.  (AR 314.)  There are approximately 3400 of
these jobs locally and 88,000 in the national  economy.  (AR 314.)  This job base was
eroded by 50% because some employers do not permit stools.  (AR 314-15.)

Another example was basket filler, also light unskilled work.  (AR 315.)  There are
3200 of these jobs locally and 56,000 in the national economy.  (AR 315.)  This job base
also would be eroded by 50%.  (AR 315.)

A third example is cleaner and polisher, also light unskilled work.  (AR 315.)  There
are 5000 of these jobs in the local economy and 90,000 in the national economy with up to
50% erosion.  (AR 315.)

The vocational expert testified that no sedentary jobs would allow a sit/stand option.
(AR 319.)

///

**C.    The ALJ's Step Five Determination Is Supported
By Substantial Evidence And Free Of Legal Error**

Plaintiff contends that the ALJ failed to apply the Guidelines as a framework for decisionmaking and acted contrary to Social Security Ruling 83-14.  Plaintiff contends that she should have been adjudged "Disabled" under Grid Rule 201.10 for <u>sedentary</u> work.  (JS 4.)

Plaintiff's contentions lack merit.  The ALJ utilized the grids as a framework of decisionmaking and followed Ninth Circuit case authority and applicable Social Security Rulings in obtaining a vocational expert's testimony on the extent to which her sit/stand nonexertional limitation eroded the applicable <u>light</u> occupational base.  The ALJ determined that there were a significant number of jobs in the national economy at the <u>light</u> exertional level that Plaintiff could perform.  The ALJ's disability determination correctly turned on the vocational testimony, not the grids.  The ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and free of legal error.

**1.    The ALJ's Determination That Significant Jobs Exist
That Plaintiff Can Perform Is Supported By
Substantial Evidence**

The Guidelines were promulgated in 1978.  <u>See</u> <u>generally</u> <u>Heckler v. Brown</u>, 461 U.S. 458, 460 (1983) (upholding the Guidelines).  They provide a system "for disposing of cases that involve substantially uniform levels of impairment."  <u>Desrosiers v. Sec'y of Health & Human Services</u>, 846 F.2d 573, 578 (9th Cir. 1988) (Pregerson, J., concurring).  The grids correlate a claimant's age, education, previous work experience, and RFC to direct a finding of disabled or not disabled, without the need of testimony from vocational experts.  <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 (9th Cir. 1988); <u>Heckler</u>, 461 U.S. at 461.  The grids, however, only apply "where they <u>completely and accurately</u> represent a claimant's limitations."  <u>Tackett</u>, 180 F.3d at 1101 (emphasis in original); <u>see</u> <u>also</u> <u>Heckler</u>, 461 U.S. at 462 n.5.

The Guidelines present in table form a shorthand method for determining the availability and number of suitable jobs for a claimant.  <u>Tackett</u>, 180 F.3d at 1101.  The grids

categorize jobs by three physical "exertional" levels, consisting of sedentary, light and medium work.  Id.  These exertional levels are further divided by the claimant's age, education and work experience.  Id.  The grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in the appropriate exertional category.  Id.  A claimant must be able to perform the full range of jobs in an exertional category for the grids to apply.  Id.

An ALJ must apply the grids if a claimant suffers only from an exertional impairment.  Cooper, 880 F.2d at 1155.  The grids direct a ruling of disabled or not disabled.  Id.  If the grids direct a finding of disabled, the ALJ is bound by that result.  Id. at 1157.

The Ninth Circuit recognizes that nonexertional limitations may make the grids inapplicable.  Tackett, 180 F.3d at 1101-1102.  Nonexertional limitations are non-strength related limitations that include mental, postural, manipulative, sensory, or environmental limitations.  Cooper, 880 F.2d at 1155 n.7.

In cases involving both exertional and nonexertional limitations, the grids are consulted first to determine whether a finding of disabled can be based on exertional limitations alone.  Id. at 1155.  If so, the grids direct a finding of disability which the Commissioner must accept.  Id. at 1157.

If not, the ALJ must use the grids as a framework for consideration of how much the nonexertional limitations limit the range of work permitted by the exertional limitations.  Tackett, 180 F.3d at 1102.  A nonexertional impairment, if significant, may limit the claimant's functional capacity in ways not contemplated by the Guidelines.  Id.  In such instances, the ALJ may not rely on the grids alone for the availability of jobs but must obtain the testimony of a vocational expert.  Id.; Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002); Moore, 216 F.3d at 869-71.

In this case, the parties agree that Claimant suffers from both exertional and nonexertional limitations.  The sit/stand option is a postural nonexertional limitation.  Considering first only Claimant's exertional limitations, she could perform the full range of

light work and the grids would direct a ruling of "not disabled" under Grid Rules 202.18 (younger individual) and 202.11 (closely approaching advanced age).  (AR 28.)  The ALJ, however, recognized that the sit/stand nonexertional limitation may significantly erode the occupational base of available work for the Claimant, which necessitated the testimony of a vocational expert as directed by the Appeals Council and case law.  (AR 28.)  The determination of whether a claimant is disabled turns on whether the vocational expert's testimony indicates that there are significant jobs in the national economy that Claimant could perform.  <u>Moore</u>, 216 F.3d at 869 (7700 regional and 125,000 jobs was substantial evidence to support determination of not disabled); <u>Thomas</u>, 278 F.3d at 960 (1300 jobs locally and 622,000 nationally); <u>Moncada v. Chater</u>, 60 F.3d 521, 524 (9th Cir. 1995) (2300 jobs locally and 64,000 nationwide sufficient).

In this case, the vocational expert testified that there were 11,600 jobs locally and 224,000 nationwide for the three bench job examples she cited.  (AR 28, 314-15.)  Thus, there was substantial evidence to support the ALJ's determination that Claimant was not disabled.

### 2.    The ALJ's Determination of Disability Is Free of Legal Error

Plaintiff contends that the ALJ failed to apply the grids as a frame of reference or a framework for consideration.  This is incorrect.  The ALJ made specific reference to the Guidelines and made the appropriate findings regarding RFC, age, education, and work experience.  (AR 27) ("I must consider the claimant's residual functioning capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines . . . ).  He also observed that, when a claimant has nonexertional limitations, "the medical-vocational rules are used as a framework for decisionmaking," referring to SSRs 83-12 and 83-14.  (AR 27.)  Then, because of Claimant's nonexertional limitations, he relied on the vocational expert's testimony to determine how much those limitations eroded the light occupational base for Claimant.  (AR 28.)  The ALJ was guided by the vocational expert's testimony on whether a significant number of jobs exist for Claimant in the national

1    economy.  The ALJ's decisionmaking framework is entirely in accord with Ninth Circuit case
2    law, as set forth in <u>Moore</u>, <u>Thomas</u>, and <u>Moncada</u>.

3          It also is in accord with Social Security Ruling ("SSR") 83-12 (cited by the ALJ at AR
4    27), which the ALJ must follow.  <u>Bray v. Commissioner</u>, 554 F.3d 1219, 1224 (9th Cir. 2009)
5    (SSRs are binding on ALJs and entitled to deference so long as consistent with Social
6    Security Act and regulations); <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1457 <u>esp.</u> n.6 (9th
7    Cir. 1989).  SSR 83-12 is a policy statement on how to use the grids as a framework for
8    adjudicating claims when nonexertional limitations render the grids inapplicable.  SSR 83-12
9    makes clear that vocational testimony is used to ascertain the extent to which nonexertional
10   limitations erode the occupational base for an exertional category ("[w]here the extent of
11   erosion of the occupational base is not clear, the adjudicator will need to consult a
12   vocational resource").

13         More importantly, SSR 83-12 contains a Special Situations section on alternate
14   sitting and standing.  The Ruling notes that an individual may not be able to perform
15   sedentary work because of the prolonged sitting usually required, or to perform the standing
16   required for light work.  In such cases, "a VS [vocational specialist] should be consulted to
17   clarify the implications for the occupational base."

18         SSR 83-12 does not direct a finding of disability or say that a sit/stand option is
19   inconsistent with light work.  It "mandates the use of a VE [vocational expert]." <u>Moore</u>, 216
20   F.3d at 871; <u>see</u> <u>also</u> <u>Misner v. Chater</u>, 79 F.3d 745, 746 (8th Cir. 1996) (vocational expert
21   testimony that light jobs are available for a claimant who needs to alternate positions is not
22   inconsistent with SSR 83-12).  Thus, Plaintiff cannot argue that a sit/stand option is
23   inconsistent with light work, or that she only can perform sedentary jobs or that Grid Rule
24   201.10 (sedentary exertional level) must apply to dictate a ruling of disabled.  The grids are
25   not determinative; the vocational expert testimony is.

26         The ALJ also properly applied SSR 83-14.  SSR 83-14 is another policy statement on
27   using the grids as a framework for evaluating a combination of exertional and nonexertional
28   impairments.  Like SSR 83-12, SSR 83-14 indicates that "the vocational assistance of a

1    vocational resource may be necessary."  SSR 83-14 gives as an example "light exertion
2    with a nonexertional impairment."  The Ruling states that any nonexertional limitation on
3    light work "must be considered very carefully to determine its impact on the size of the
4    remaining occupational base of a person who is otherwise found functionally capable of light
5    work."  Where the nonexertional impairment significantly erodes the occupational base, "the
6    remaining portion of the job base will guide the decision."  SSR 83-14 (emphasis added).
7    Where the effect of the nonexertion impairment is unclear, "the services of a VS will be
8    necessary."  Like 83-12, then, SSR 83-14 calls for vocational testimony which will "guide the
9    decision" on whether significant jobs exist in the national economy that a claimant with a
10   sit/stand option can perform.

11          SSR 83-14 does provide that a nonexertional limitation may "substantially reduce a
12   range of work to the extent that an individual is very close to meeting a table rule which
13   directs a conclusion of 'Disabled.'"  Relying on this comment, Plaintiff claims that, "if we
14   utilize the grids as a framework, and by direct application of the analysis set forth in SSR 83-
15   14, Plaintiff should have been adjudged 'Disabled' under the framework of Grid Rule
16   201.10" for sedentary work.  (JS at 4.)  This argument fails because the jobs in the national
17   economy that Plaintiff can perform are in the light category.  It also fails because SSR 83-14
18   specifically provides that the vocational testimony will "guide the decision."  Nowhere does
19   SSR 83-14 require the ALJ to return to the grids or apply the grids where the vocational
20   testimony indicates that jobs exist in the national economy despite a nonexertional limitation
21   like the sit/stand option.

22          Plaintiff nonetheless asserts that, because the sit/stand option reduces the light
23   category occupations to roughly the same level as are available for sedentary work, she
24   should have been deemed disabled.  There is a leap of logic in that assertion that finds no
25   support in SSR 83-14.  Moreover, the Ninth Circuit in Moore squarely rejected Plaintiff's
26   argument that the light work category was so reduced that it was essentially equivalent to
27   the sedentary category.  Id. at 870-71.  In Moore, the grid for sedentary work would direct a
28   finding of disabled but the grid for light work would direct a finding of not disabled.  The

1    Ninth Circuit, after noting that SSR 83-12 directs consultation with a vocational expert when

2    a claimant falls between two rules, observed that "as Moore suffered from both exertional

3    and nonexertional limitations, the ALJ could not have made that determination before relying

4    upon the VE, SSR 83-12 does not mandate a finding of disabled.  Instead, it mandates the

5    use of a VE."  Moore was based on SSR 83-12, not 83-14, but there is no reason why the

6    result would be different under SSR 83-14.

7           Plaintiff also relies on Swenson v. Sullivan, 876 F.2d 683 (9th Cir. 1989), which

8    rejected vocational testimony that was "inconsistent with the grids' overall framework."  Id. at

9    688.  Swenson is inapplicable here.  In Swenson, the ALJ improperly rejected medical

10   evidence establishing that the claimant was disabled and could perform no sedentary or

11   light jobs.  Id.  As a result, the vocational expert testimony failed to take into account all of

12   the claimant's impairments.  Because Plaintiff should have been determined disabled under

13   the grids, vocational testimony could not overcome that result.  Id. ("An ALJ may not find

14   from vocational testimony that a claimant, deemed disabled under the grids, nonetheless

15   could perform a substantial number of jobs and not be disabled").

16          Here, of course, Plaintiff was not disabled under the grids for light work but her

17   nonexertional limitations triggered the necessity for vocational expert testimony to resolve

18   whether a significant number of jobs exist for Claimant in the national economy.  The ALJ

19   was "guided" by that testimony in reaching his disability determination.  The ALJ did not

20   violate or act contrary to SSR 83-14.  The ALJ properly applied the grids as a framework for

21   decisionmaking in accordance with Ninth Circuit case law and SSRs 83-12 and 83-14.  That

22   decisionmaking framework called for vocational expert testimony to ascertain the extent of

23   erosion of the light exertional occupational base.  The vocational expert testimony that

24   significant jobs existed in the national economy for Claimant was not inconsistent with the

25   grids' overall framework or the assumptions that underlie the grids.  The ALJ determination

26   that Plaintiff was not disabled is supported by substantial evidence and free of legal error.

27

28

**ORDER**

IT IS HEREBY ORDERED that the Decision of the Commissioner of Social Security is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.


DATED: <u>May 6, 2010</u>                    <u>        /s/ John E. McDermott        </u>
                                          JOHN E. MCDERMOTT
                                          UNITED STATES MAGISTRATE JUDGE